IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 25-CR-03076-RK-WJE |
| ) | |
| DAVID WILLIAM PLATEK, ) | |
| ) | |
| Defendant. ) | |

**MOTION TO SUPPRESS EVIDENCE OBTAINED FROM SEARCH WARRANT OF HOME; EXHIBITS**

## TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT .................................................................................................... 2

    A.    The Search Warrant Fails to Particularly Describe the Place to be Searched ............................................................................................................ 3

    B.    The Search Warrant is Facially Overbroad. ...................................... 6

    C.    The Firearm was Outside the Scope of the Search Warrant and No Evidence of it Can be Offered at Trial. ......................................... 12

    D.    All Evidence Obtained as a Result of the Fourth Amendment Violations Must Be Suppressed ........................................................ 13

III. CONCLUSION ............................................................................................... 14

# TABLE OF AUTHORITIES

**PAGE(S)**

**Federal Cases**

*Groh v. Ramirez*,
    540 U.S. 551 (2004) .................................................................................. 5

*Kiesling v. Holladay*,
    859 F.3d 529 (8th Cir. 2017) ..................................................................... 7

*Manriquez v. Ensley*,
    46 F.4th 1124 (9th Cir. 2022) .................................................................... 5

*Mapp v. Ohio*,
    367 U.S. 643 (1961) ................................................................................ 13

*Riley v. California*,
    573 U.S. 373 (2014) ................................................................................ 10

*Silverman v. United States*,
    365 U.S. 505 (1961) .................................................................................. 3

*Stanford v. State of Tx.*,
    379 U.S. 476 (1965) .................................................................................. 6

*United States v. Andrews*,
    713 F. Supp. 1319 (D. Minn. 1989) ........................................................... 6

*United States v. Bridges*,
    344 F.3d 1010 (9th Cir. 2003) ................................................................... 7

*United States v. Burkhow*,
    No. 19-CR-059-CJW-MAR, 2020 WL 589536 (N.D. Iowa Feb. 6,
    2020) ....................................................................................................... 11

*United States v. Galpin*,
    720 F.3d 436 (2d Cir. 2013) ...................................................................... 7

*United States v. Griffith*,
    867 F.3d 1265 (D.C. Cir. 2017) ................................................................. 3

# TABLE OF AUTHORITIES

                                                                                            **PAGE(S)**

*United States v. Ivey*,
   91 F.4th 915 (8th Cir. 2024) .................................................................................. 3

*United States v. LeBron*,
   729 F.2d 533 (8th Cir. 1984) ........................................................................ 7, 9, 12

*United States v. Leon*,
   468 U.S. 897 (1984) ................................................................................................ 5

*United States v. Nichols*,
   344 F.3d 793 (8th Cir. 2003) (per curiam) ......................................................... 13

*United States v. Nieman*,
   520 F.3d 834 (8th Cir. 2008) ................................................................................ 3

*United States v. Saunders*,
   957 F.2d 1488 (8th Cir. 1992) .............................................................................. 2

*United States v. Skelton*,
   867 F.2d 446 (8th Cir. 1989) ................................................................................ 3

*United States v. Thurman*,
   625 F.3d 1053 (8th Cir. 2010) ......................................................................... 4, 5

*United States v. Whitney*,
   633 F.2d 902 (9th Cir. 1980) ................................................................................ 6

*Wong Sun v. United States*,
   371 U.S. 471 (1963) .............................................................................................. 13

## Federal Statutes

18 U.S.C. § 875(c) ................................................................................................ 9, 10

## Other Authorities

2 W. LaFave, *Search and Seizure*, § 4.6(a) (5th ed. 2012) ....................................... 7

Fourth Amendment ................................................................................... *passim*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

In 2019, the District Attorney of San Luis Obispo County, Dan Dow, initiated a prosecution of David Platek for identity theft—for allegedly creating a satirical Facebook profile of the DA's political ally.   After that political prosecution dragged on for three years without Mr. Platek caving to the pressure to take a plea deal, in late 2022 the DA finally dismissed all charges.   The prosecution did, however, take a toll on Mr. Platek.   Due to news coverage, he lost his high-paying career in the tech industry.   He struggled to maintain stable housing.   He also lost most of his friends and family.   He could not escape the prosecution.   It haunted him: each time a potential employer Googled his name, the very first results pointed to the since-dismissed charges.   Those same sources, of course, never pointed to the more important fact that all charges had been dismissed.

In 2024, Mr. Platek had long left San Luis Obispo County, relocating to Springfield, Missouri.   He had few friends left, but one of them, Daniel Serber, he had known since childhood.   On December 11, 2024, Mr. Platek sent Mr. Serber an image of a purported X (formerly, Twitter) post: a retweet of the DA's pro-Second Amendment post:



1

Beginning two days before the re-tweet, or December 7, and continuing for nine days, until December 16, Mr. Platek also vented to Mr. Serber about the toll the state prosecution continued to take on his life.

Mr. Platek was arrested at his Springfield home on January 2, 2025 and has been detained since that date. Three weeks later, on January 23, 2025, the government obtained a warrant to conduct a nearly limitless search of Mr. Platek's residence.

That search warrant was unconstitutional. *First*, the warrant failed to accurately describe the place to be searched by purporting to authorize the search of a much larger physical area than Mr. Platek's residence. *Second*, the warrant is facially overbroad because it purports to authorize the search and seizure of items for which there is no probable cause in the affidavit. *Third*, and finally, law enforcement took photographs (but did not seize) a perfectly legal firearm that fell outside the scope of the warrant despite its overbreadth.

All evidence from the search should be suppressed, including but not limited to, evidence from any digital devices, evidence from notebooks and paperwork collected in the home, and any evidence of a firearm found in the home that was photographed but not seized.

## II. ARGUMENT

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." U.S. Const. amend. IV. To satisfy the Fourth Amendment, a warrant must describe those things to be seized with sufficient particularity and cannot be overly broad. Particularity prohibits the government from conducting "general, exploratory rummaging of a person's belongings." *United States v. Saunders,* 957 F.2d 1488, 1491 (8th Cir. 1992). It

requires both the place(s) to be searched and items to be seized in sufficient detail. *See United States v. Ivey*, 91 F.4th 915, 918 (8th Cir. 2024) ("The warrant here specified the phone to be searched and identified the information to be seized."). A warrant is overbroad, on the other hand, if it purports to authorize the seizure of items that go beyond the probable cause showing. *See United States v. Nieman*, 520 F.3d 834, 838–39 (8th Cir. 2008) (in assessing overbreadth challenge, noting defendant's argument that warrant placed "no limits on the category of records, documents, notes or photographs to be seized" in relation to the offenses described in the affidavit); *United States v. Skelton*, 867 F.2d 446, 449 (8th Cir. 1989) (overbreadth analysis turns on whether the warrant calls for the seizure of property tied to the facts and offenses described in the affidavit).

The search warrant at issue here was for Mr. Platek's home. The right of an individual to retreat into his own home and "there be free from unreasonable governmental intrusions stands at the very core" of the Fourth Amendment's protections. *Silverman v. United States*, 365 U.S. 505, 511 (1961). Thus, the Court must be particularly circumspect of a warrant that permits a search of the specially protected place. *See United States v. Griffith*, 867 F.3d 1265, 1272 (D.C. Cir. 2017).

A.   **The Search Warrant Fails to Particularly Describe the Place to be Searched**

The particularity requirement prevents officers from conducting "a general, exploratory rummaging of a person's belongings." *Ivey*, 91 F.4th at 918. In determining whether the particularity requirement has been met, courts should analyze whether (1) "the warrant describes the place to be searched with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort," and (2) there is "reasonable probability that another premise

might be mistakenly searched." *United States v. Thurman*, 625 F.3d 1053, 1057 (8th Cir. 2010).

This warrant improperly allowed a much larger area to be searched than just Mr. Platek's residence. (Ex. B.) The probable cause showing was explicitly limited to evidence within the control of Mr. Platek. (Ex. A ¶¶ 7-44; *see, e.g.*, *id.* ¶¶ 43-44 (titled "Platek's Residence").) The property to be searched, however, was not so limited. (Ex. B.)

Specifically, the warrant describes the place to be searched as the entirety of 716 1/2 W. State Street, including any buildings associated with that address and vehicles " ███████████████████████████████ (*Id.*) It further describes the address as a ███████████ with a white front door, a small wooden deck attached to the front, "███████████████████████████████████████████████████ and includes photographs of the entire home. (*Id.*)

But at the time the search warrant was requested and issued—three weeks after extensive surveillance of Mr. Platek, his arrest, and his interview—law enforcement well knew that Mr. Platek lived alone and, more importantly, only on the top floor of the residence. From December 30, 2024 to January 2, 2025, the FBI had surveilled Mr. Platek and arrested him as the only person going into and coming out of "███████████████████████████████ (*See* Ex. C; Ex. D at 1303.) The warrant itself states this fact: ███████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████ (Ex. A ¶ 43.) Moreover, at the time the FBI requested the warrant, they had already interviewed Mr. Platek on January 2,

4

2025, seized his housekeys, and left his dog with a neighbor around the corner because he lived alone. (Ex. E at 21:55-25:30; Ex. F at 07:20-07:50.)

The property authorized to be searched by the warrant was a much larger area than simply Mr. Platek's residence, did not adequately describe the place to be searched, and misrepresented the limited scope of property that the FBI knew was connected to Mr. Platek—the only person for whom there was probable cause to search. Based on the description of the property to be searched in the warrant (Ex. B), there was a "reasonable probability" that the officers could "mistakenly search" "another premise," such as that occupied by the residents living on the first floor of the home. *See Thurman*, 625 F.3d at 1057. These "defects are such that they would have been noticed by a reasonably careful officer who read the warrant before executing it." *Manriquez v. Ensley*, 46 F.4th 1124, 1129–30 (9th Cir. 2022).

Simply put: on its face the warrant should have been limited to Mr. Platek's residence, but it was not. It permitted the officers to search any building or vehicle on the property. Thus, the warrant was "so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *United States v. Leon*, 468 U.S. 897, 923 (1984). Indeed, failing to adequately (or accurately) describe the place to be searched is perhaps the most obvious way in which a warrant can, on its face, fail to satisfy the Fourth Amendment. *See id.* As the Supreme Court has instructed, "the presumptive rule against warrantless searches applies with equal force to searches whose only defect is a lack of particularly in the warrant." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004)). This concern is heightened where an individual's home is searched: "the right of a man to retreat into his home and there be free from unreasonable government intrusion stands at the very core of the Fourth Amendment." *Id.*

5

Courts in the Eighth Circuit have suppressed evidence when a warrant failed to adequately describe the place to be searched, even though officers did not actually know the building to be searched included multiple dwellings, but where they should have been aware of that fact. *See, e.g.*, *United States v. Andrews*, 713 F. Supp. 1319, 1321–22 (D. Minn. 1989) (in granting motion to suppress evidence from search of multiple dwelling structure, concluding: "The magistrate concluded that the deputy could have conducted further investigation to determine if more than one person occupied the house. The Court concurs."). Here, it is indisputable that law enforcement, following three weeks of surveillance, *did* know that the area described in the warrant included a much larger area than Mr. Platek's living space. (*See* Ex. A ¶ 43; Ex. C; Ex. D at 1303k; Ex. E at 21:55-25:30; Ex. F at 07:20-07:50.) It makes their reliance on the warrant all the more unreasonable, and suppression of all evidence is the only appropriate remedy.

The government may argue that the defect is constitutional because the agents only searched the second floor. But, the Supreme Court has already made clear that a facially deficient warrant may not be salvaged just because "a Magistrate authorized the search" or that the "search did not exceed the limits intended by the Magistrate." *Id.*

**B.     The Search Warrant is Facially Overbroad.**

Compounding the erroneous description of the physical property, the warrant was also overbroad in describing what the agents were permitted to search for and seize. (Ex. G.) "The command to search can never include more than is covered by the showing of probable cause to search." *United States v. Whitney*, 633 F.2d 902, 907 (9th Cir. 1980) (citation omitted). As the Supreme Court has stated, the Fourth Amendment "reflect[s] the determination of those who wrote the Bill of Rights that the people of this new Nation should forever be secure in their persons,

houses, papers, and effects' from intrusion and seizure by officers acting under the unbridled authority of a general warrant." *Stanford v. State of Tx.*, 379 U.S. 476, 581 (1965). A warrant's scope should not be "broader than can be justified by the probable cause upon which the warrant is based." *United States v. Galpin,* 720 F.3d 436, 445 (2d Cir. 2013); *see also* 2 W. LaFave, *Search and Seizure*, § 4.6(a) (5th ed. 2012).

A warrant is overbroad, therefore, if it authorizes law enforcement to search for and seize items that are beyond the probable cause showing made out by the affidavit. *See Kiesling v. Holladay*, 859 F.3d 529, 535–36 (8th Cir. 2017) (in assessing breadth challenge, determining whether affidavit established probable cause as to each category of specified items); *United States v. LeBron*, 729 F.2d 533, 537 (8th Cir. 1984) ("[A] warrant may issue to search and seize records *if there is probable cause* to believe that [those specific items] which are evidence or instrumentality of a crime will be there." (emphasis in original)); *see also United States v. Bridges*, 344 F.3d 1010, 1016 (9th Cir. 2003) (Search warrants are "fundamentally offensive to the underlying principles of the Fourth Amendment when they are so bountiful and expansive in their language that they constitute a virtual, all-encompassing dragnet of personal papers and property to be seized at the discretion of the State.").

Given the above, it is imperative at the outset to assess the nature and scope of the probable cause set forth in the January 23, 2025 warrant to search Mr. Platek's home. Probable cause was limited to the offense of sending threats by interstate commerce. (Ex. A ¶ 6.) And the factual basis was limited solely to text messages allegedly sent by David Platek, using his cellphone, to a friend, Daniel Serber, over a 10-day period from December 7 to December 16, 2024.[1] (Ex. A ¶¶ 8–38.) There

---

1 The warrant also references Mr. Platek's retweet of the DA's Second Amendment retweet, originally posted by Elon Musk. (Ex, A ¶ 8.) However, the warrant

is no evidence of any steps of any kind taken to carry out any threat. In fact, the only evidence the agents had at the time of the house warrant was from Mr. Serber who stated that Mr. Platek was not " ███████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████ (Ex. H at 07–08.)2 Moreover, at the time of the warrant, Mr. Platek was in custody on the charges so there was no possibility of further acts by him. (Ex. A ¶ 7.) In addition, the government had already seized the phone he used to send the incriminating texts and had already obtained a search warrant for that phone. (*Id.* ¶¶ 7, 39–40.)

Despite this narrow probable cause showing, the government sought and received a warrant that permitted them to seize every piece of paper and every digital device. The warrant was overbroad.

*First*, the warrant was completely unlimited in the scope of the physical evidence to be seized. (Ex. G.) It permitted the government to seize every single piece of paper in the residence "███████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████ (*Id.* ¶¶ 2–3.) It permitted the government to seize "███████████████████████████████████████ that could contain other evidence outside of the home. (*Id.* ¶ 6.) It permitted the

---

notably does not state that the DA ever saw or understood that retweet—to the extent it ever existed. The warrant carefully notes that the only evidence of the retweet is found in a "text[] of a screenshot" of it sent from Mr. Platek to Mr. Serber. (Id. ¶ 23.) The warrant also specifically notes that Mr. Platek has "no followers" on X and that even if he saw it, the DA likely would not even realize it was a threat. (Id. ¶¶ 24-27.)

2 Although the interview of Mr. Serber was conducted on December 20, 2024, four weeks before the warrant, none of that information was included.

8

government to seize every single digital device and digital storage drive on the property. (*Id.* ¶ 1.)

In this sense, the warrant is reminiscent of the overly broad warrant in *United States v. LeBron*, which in the context of a search for stolen property, authorized the seizure of "any records which would document illegal transactions involving stolen property." 729 F.2d 533, 536 (8th Cir. 1984). Despite its limitation to records of "transactions involving stolen property," the Eighth Circuit had no difficultly concluding that the warrant was unconstitutionally broad:

> There is no attempt to particularize the description of the property or of the records themselves. The only limiting factor is the reference to "stolen property." As earlier discussed, this generic classification is not sufficient to provide any guidance to an executing officer. Absent as well is any explanation of the method by which the officers were to distinguish such records from any documents relating to legal transactions. The record also reveals that there was nothing in the warrant or affidavit to substantiate the contention that there even would be such records in LeBron's home. In fact, the officers searched and seized general papers, documents, credit cards, and checks that bore no direct relation to stolen property. The records clause allowed, and resulted in, an indiscriminating rummage of the entire home. We hold that the records clause did not provide adequate protection against an unwarranted intrusion into the defendant's personal rights. Consequently, it authorized an impermissibly broad search of LeBron's home.

*Id.* at 539 (citations omitted).

Here, too. To the extent the warrant contained any limits on the search and seizure of physical records and documents, the only limitation was that physical items relate to a violation of 18 U.S.C. § 875(c). As evidenced by the items that were actually seized by law enforcement, that is also an amorphous concept, and one for which the warrant provided no guidance to executing officers in how to ascertain whether a specific item did or did not fall within the warrant's scope. Indeed,

9

officers seized entire notebooks, with many pages containing irrelevant writings such as the state of Mr. Platek's finances. (*See* Exh. J.) The warrant here likewise authorized "an indiscriminating rummage of the entire home." *Id.* And, just as in *Lebron*, the warrant affidavit provided no probable cause to believe that any documentation relating to interstate threats would be found in Mr. Platek's residence given the very narrow factual basis in the affidavit, specifically a series of text messages between Mr. Platek and Mr. Serber over a 10-day period, especially when Mr. Platek was in custody and the phone used to send the alleged threats had been seized. Particularly at that juncture, there was no basis for a warrant to authorize the wholesale seizure of paper documents and records from the residence.

**Second**, in addition to seizing any and all digital devices on the premises, the warrant purported to authorize limitless *searches* of the contents of said digital devices—which could themselves hold countless number of documents, messages, photos, and so on. (*Id.* ¶ 6 ("████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████").) Investigators seized three electronic devices: two computers and one Apple iPad. (Ex. J at p. 1.) This aspect of the warrant is especially troubling given the significant privacy concerns implicated by modern electronic devices like the ones that were seized, which can store thousands upon thousands of documents in a single place. *See Riley v. California*, 573 U.S. 373, 393 (2014) ("The United States asserts that a search of all data stored on a cell phone is 'materially indistinguishable' from searches of these sorts of physical items. That is like saying a ride on horseback is materially indistinguishable from a flight to the moon." (citations omitted)). The search in this case thus takes the problem identified by the 8th Circuit in *Lebron* and amplifies it exponentially.

10

Indeed, courts in the Eighth Circuit have readily acknowledged the significant concerns presented by limitless searches of digital devices given the volume of material that can now be stored on such devices. In that scenario, in particular, limits such as date ranges and other meaningful restrictions on otherwise limitless searches are mandated by the Constitution, especially in a case like this where the factual basis for probable cause is itself limited to such a discrete time period (10 days) and issue (alleged threats concerning one individual). *See e.g.*, *United States v. Burkhow*, No. 19-CR-059-CJW-MAR, 2020 WL 589536, at *10 (N.D. Iowa Feb. 6, 2020) ("The mere fact that the government could not determine when the alleged criminal conduct began does not justify a search without any temporal limitations [of the suspect's Facebook account]. Some reasonable attempt could have been made to narrow the scope of this search, particularly by setting date limitations if not restrictions to specific account activities or interactions with particular persons.")

There is simply no justification for a warrant, on a probable cause showing like the one here, to authorize a limitless search of any electronic device found in a residence. The lack of any limitations is especially glaring in this case because the warrant for Mr. Platek's phone—obtained by the same United States Attorney's Office and investigating agencies in the Western District of Missouri—*did* meaningfully limit the date range for documents that could be seized pursuant to the warrant. Specifically, that warrant authorized a search of Mr. Platek's messages over a sixty day period, from November 1, 2024 to January 2, 2025. (Ex. I at p. 1.) And that limitation applied to the search of Mr. Platek's phone even though it was the only device for which law enforcement could even articulate a nexus to the offense being investigated. It was the device that was used to send the communications that the government contends are interstate threats. But when searching a large physical space—containing at least three electronic devices with no

11

identifiable nexus to the offenses being investigated—these same investigating agencies were under no date restrictions whatsoever on the documents or communications that could be searched and seized.

The issue is perhaps best crystalized by this: had Mr. Platek's phone been located in the house, as opposed to on his person, law enforcement would have been free to conduct a wholesale search of every file, as opposed to being limited to messages and documents falling within a sixty-day period.

This warrant was facially overbroad.

## C. The Firearm was Outside the Scope of the Search Warrant and No Evidence of it Can be Offered at Trial.

Despite the shocking degree to which the warrant was overbroad, it still failed to authorize the seizure of the firearm located in the residence. This is why presumably law enforcement did not actually seize it. Officers knew the warrant did not authorize its seizure. Instead, they took photos of the firearm, which the government now apparently intends to introduce in its case-in-chief.

As reflected by officers' decision to not seize the firearm, all evidence of the firearm, including photographs, must be suppressed. Indeed, the firearm fails to fall into either of the two general categories of evidence authorized by the warrant. *First*, it is not one of the physical items described above, such as computers, records, documents, writings, correspondence, and so on. *Second*, there is no conceivable basis in which the firearm could have fallen within the general subject matter being sought by the warrant: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Again, this case is similar to the unconstitutional warrant in *LeBron*, where the Eighth Circuit suppressed firearms that were located during the "indiscriminating rummaging of [Mr. Platek's entire home" ostensibly in search of records. *See Lebron*, 729 F.2d at 537.

12

Even putting aside the specific offense for which the warrant authorized a search, the firearm was not evidence of *any* crime. This is yet another reason the firearm itself was not seized: it was entirely legal under Missouri law. Because it was not contraband, the government cannot fall back on an exception to plain view to justify the seizure of an item that otherwise plainly falls outside the scope of the warrant. *Cf. United States v. Nichols*, 344 F.3d 793, 798–99 (8th Cir. 2003) (per curiam) (firearms not subject to suppression because they were subject to plain view doctrine during otherwise constitutional search and their "incriminating nature [was] immediately apparent").

All evidence of the firearm must be suppressed.

**D.     All Evidence Obtained as a Result of the Fourth Amendment Violations Must Be Suppressed**

The exclusionary rule forbids the use of improperly obtained evidence at trial. *See Mapp v. Ohio*, 367 U.S. 643, 655 (1961). Given the fatal defects in the warrant here, all evidence gathered during the search of the residence—from digital devices, notebooks and paperwork, and of the firearm—must be suppressed. *See, e.g.*, *Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963) ("The exclusionary prohibition extends as well to the indirect as the direct products of such [Fourth Amendment] invasions.").

/ /
/ /
/ /

13

## III. CONCLUSION

The warrant to search Mr. Platek's residence fails basic tests of the Fourth Amendment. It neither describes with sufficient specificity the place to be searched nor sufficiently cabined the items that could be seized based on the probable cause showing contained in the affidavit. Evidence was found as a direct result of these constitutional violations. The Constitution demands that it be suppressed.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: December 5, 2025  By  */s/ James S. Threatt*
JAMES S. THREATT
REBECCA M. ABEL
Deputy Federal Public Defenders
Attorney for David William Platek

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th Day of December, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which sent e-mail notification of such filing to all CM/ECF participants in this case.

*/s/ James S. Threatt*
**James S. Threatt**