## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 6:25-cr-03076-RK-1 |
| | ) | |
| | ) | |
| DAVID WILLIAM PLATEK, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Pending before the Court is Defendant David William Platek's Motion to Suppress. (Doc. 63). The Government has filed its suggestions in opposition. (Doc. 74). Mr. Platek has timely filed a reply. (Doc. 77). The Court held a hearing on this matter on January 22, 2026. (Doc. 103). The issue is now ripe for consideration. For the reasons that follow, it is recommended that the motion be DENIED.

## I. Findings of Fact

Based on the evidence presented at the hearing, the Court submits the following proposed findings of fact:

1.    On January 23, 2025, FBI Special Agents based in Springfield, Missouri, obtained and executed a federal search warrant at Mr. Platek's residence, located at 716 ½ West State Street, Springfield, Missouri. (Doc. 74 at 7; Doc. 74-1 at 2).

2.    The search warrant included an affidavit prepared by FBI Special Agent Andrew Harris. (*See* Doc. 74-1 at 5-22).

3.      In the affidavit, Special Agent Harris reported that Mr. Platek had sent text messages

to a third party containing threats to harm or kill the alleged victim. The affidavit states,

in relevant part,

> On or about December 9, 2024, PLATEK stated he had ammunition, and just
> needed to drive to California: "I've got the ammo, I just need to rent a uhaul
> [sic] and drive to CA." PLATEK also said "VICTIM took everything I made
> from me, and I want to take it from VICTIM."
>
> On or about December 9, 2024, PLATEK said he would rent a van to drive to
> San Luis Obispo and he "has been eyeing the pallet of potassium nitrate" at a
> nearby farm.
>
> On or about December 10, 2024, PLATEK also texted "I'll do [sic] out
> surrounded by the bodies of the VICTIM's family on a Christmas day."
> PLATEK said he would host a website "killingVICTIM.com" and
> "killingVICTIM.se" offshore "where the feds can't touch." PLATEK said "I
> want so badly to choke the life out of VICTIM, it [sic] instead I'll donate 6
> organs to people desperate need." PLATEK texted Person 1, "I'm inclined to
> murder VICTIM's family in front of [him/her] because I am capable of such
> heinous vengeance, but concede no one has the stomach for that appropriate
> punishment reserved for power made tyrants."

(Doc. 74-1 at 8-9; Tr. 14:18-15:12).

4.      The search warrant identified Mr. Platek's address as "716 ½ West State Street,

Springfield, Greene County, Missouri 65806." (Doc. 74-1 at 2; Tr. 10:20-22). It stated

that the search encompassed the entire property at 716 ½ West State Street, including

"the residential building, any associated outbuildings, and any appurtenances

thereto . . . and vehicles within the control of the residents." (Doc. 74-1 at 2).

5.      The search warrant described the premises as "a two-story family home with a brown

roof. The home is painted white, and the front door of the residence is also white. There

appears to be a small wooden deck attached to the front of the residence, at the front

door. There are brown wooden stairs on the east side of the residence that lead to a

second story door." (*Id.*). The search warrant included a photograph of the residence. (*Id.*; Tr. 12:6-18).

6.     In the search warrant affidavit, Special Agent Harris stated that law enforcement had conducted surveillance on Mr. Platek and observed him entering the residence through the side stairs to the second-story door. (Doc. 74-1 at 14; Tr. 11:18-23). Special Agent Harris further stated that he reviewed utility records indicating Mr. Platek was responsible for paying utilities at 716 ½ West State Street. (Doc. 74-1 at 14; Tr. 11:24-12:3).

7.     The search warrant identified the property to be seized as

> 1. Computers and computer equipment, cellular phones, digital storage devices, tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, flash drives, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, computer software, hardware, and software operating manuals, tape systems, and hard drive and other computer related operation equipment, digital cameras, scanners in addition to computer photographs, Graphic Interchange Formats, and/or photographs, undeveloped photographic film, slides, or other visual depictions of such Graphic Interchange Format equipment, and the data stored within these materials, which has been used or may be used to transmit, in interstate or foreign commerce, any communication containing any threat to kidnap any person or any threat to injure the person of a [sic] another.
> 2. Records, documents, writings, and correspondence with others pertaining to the communication of any threat to kidnap any person or any threat to injure the person of a [sic] another.
> 3. Any and all records showing or bearing indicia of the use, ownership, possession, or control of the residential/business premises described in Attachment A and items contained therein, including computer equipment, accessories, telephone(s), modem(s), or such records, whether stored on paper, in files, invoices, bills, leases, deeds, permits, licenses, telephone bills, tax receipts, or other documentation, or on magnetic media such as tape, cassette, disk, diskette, or on memory storage devices such as optical disks, or storage media.
> 4. Envelopes, letters, and other correspondence, including, but not limited to, electronic mail, chat logs, IRC logs, ICQ logs, all usage records for distributed file sharing technologies, and electronic messages, which has been used or may be used to transmit, in interstate or foreign commerce, any communication

containing any threat to kidnap any person or any threat to injure the person of a another.

5. Records or other items that evidence ownership or use of computer equipment found in the above residence, including, but not limited to, correspondence, sales receipts, and bills for Internet access, all handwritten notes and handwritten notes in computer manuals.

6. Keys, storage combinations, passwords, and paperwork which indicate any other storage containers or facilities that could contain evidence of threats to kidnap any person or any threat to injure the person of another.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

(Doc. 74-1 at 3-4).

8. Attachment B to the search warrant authorized the "review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant." (Doc. 74 at 9; Doc. 74-1 at 4).

9. The search warrant restricts the property authorized for seizure to items relevant to the charges against Mr. Platek, specifically, threats made via interstate communication. (Doc. 74-1 at 6). It states, in relevant part,

This affidavit is in support of an application for a search warrant for evidence, fruits, and instrumentalities of the foregoing criminal violations, which relate to the knowing transmission in interstate or foreign commerce of any communication containing any threat to kidnap any person or any threat to injure the person of another.

(Doc. 74-1 at 6).

10. FBI Special Agent Cameron Heath testified that during the execution of the warrant on January 23, 2025, law enforcement located and seized three computers and several

notebooks that appeared to be Mr. Platek's property. (Tr. 45:16-21, 57:3-8; Doc. 74 at 10).

11. Special Agent Heath testified that during the search, an agent located a black nine-millimeter handgun with a magazine loaded with ammunition. (Tr. 45:5-9; Doc. 74 at 10). The handgun did not bear any identifiable make, model, or serial number. (Doc. 74 at 10; Tr. 55:10-12). The special agents photographed the handgun but did not take it into custody. (Doc. 74 at 10; Tr. 56:16-19).

## II. Discussion

On May 14, 2025, a federal grand jury in the Western District of Missouri indicted Mr. Platek for four counts of communicating threats to injure, in violation of 18 U.S.C. § 875(c). (Doc. 8). On December 5, 2025, Mr. Platek filed the instant motion seeking to suppress all evidence obtained from the search of his residence pursuant to a warrant executed on January 23, 2025. (Doc. 63). In his motion, Mr. Platek contends that the search warrant was unconstitutional and violated his rights under the Fourth Amendment to the United States Constitution.

### A. Legal Standard

The Fourth Amendment mandates that "no Warrants shall issue…[unless] particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The particularity requirement prohibits officers from conducting general, exploratory rummaging of a person's belongings, and demands that the warrant be sufficiently definite to enable the searching officers to identify the property authorized to be seized." *United States v. Shrum*, 59 F.4th 968, 973 (8th Cir. 2023) (internal citations and quotations omitted). Whether a warrant fails the particularity requirement "cannot be decided in a vacuum" but must be based on the totality of the circumstances. *Id.* The particularity requirement is "one of practical accuracy

rather than hypertechnicality." *Id.*; *see United States v. Thurman*, 625 F.3d 1053, 1057 (8th Cir. 2010). A warrant is sufficiently particular if it "enable[s] the searcher to locate and identify the places and items with reasonable effort and to avoid mistakenly searching the wrong places or seizing the wrong items." *United States v. Gleich*, 397 F.3d 608, 611 (8th Cir. 2005). "[M]ere technical errors are not enough to invalidate a search warrant." *United States v. Johnson*, 75 F.4th 833, 844 (8th Cir. 2023). "'[A]n incorrect street address of the place to be searched is not necessarily fatal' to a warrant's validity." *Id.* (quoting *Thurman*, 625 F.3d at 1057). The relevant particularity inquiry is whether the warrant "described the place to be searched 'with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort,' and that there was no 'reasonable probability that another premises might be searched.'" *Id.* (quoting *Thurman*, 625 F.3d at 1057). A warrant affidavit may provide the necessary particularity if it is attached to the warrant. *United States v. Nieman*, 520 F.3d 834, 839 (8th Cir. 2008). Additionally, in determining the particularity of location for a search warrant, courts may rely on the personal knowledge of the officers involved in obtaining the warrant. *United States v. Clement*, 747 F.2d 460, 461 (8th Cir. 1984).

"Under the *Leon* good-faith exception, 'evidence seized pursuant to a search warrant . . . that is later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable.'" *United States v. Escudero*, 100 F.4th 964, 968 (8th Cir. 2024) (citing *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007)). Evidence obtained by "officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate" will not be suppressed. *United States v. Clay*, 646 F.3d 1124, 1127 (8th Cir. 2011) (citing *United States v. Leon*, 468 U.S. 897, 923 (1984)). *Leon* identifies four situations in which an officer's reliance on a warrant is not in objective good faith: "when the affidavit or testimony

supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; when the issuing judge wholly abandoned his [or her] judicial role in issuing the warrant; when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid." *United States v. Fiorito*, 640 F.3d 338, 345 (8th Cir. 2011) (citing *Leon*, 468 U.S. at 923).

When assessing an officer's good faith reliance on a search warrant under the *Leon* good-faith exception, the court can look outside of the "four corners of the affidavit" and consider the totality of the circumstances, including what the officer knew but did not include in the affidavit. *United States v. Farlee*, 757 F.3d 810, 819 (8th Cir. 2014).

If the police fail to abide by the Fourth Amendment, the exclusionary rule, a judicially prescribed remedial measure, "forbids the use of improperly obtained evidence at trial." *Martinez Carcamo v. Holder*, 713 F.3d 916, 922 (8th Cir. 2013) (quotation omitted). The exclusionary rule is limited to where police conduct is "deliberate, reckless, or grossly negligent." *Herring v. United States*, 555 U.S. 135, 144 (2009). The exclusionary rule extends to "evidence later discovered and found to be derivative of an illegality or 'fruit of a poisonous tree.'" *United States v. Tuton*, 893 F.3d 562, 568 (8th Cir. 2018) (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984)). For there to be "fruit," there must first be a "poisonous tree," that is, "an illegal search or seizure" or "an illegality." *United States v. Finley*, 56 F.4th 1159, 1166 (8th Cir. 2023) (internal citations omitted).

**B. The search warrant specifies with particularity the place to be searched.**

Mr. Platek contends that the warrant fails to particularly describe the place to be searched. (Doc. 63 at 7-10). The Government maintains that the warrant specifies the location with sufficient particularity. (Doc. 74 at 11-15). The Court recommends that the District Judge conclude the warrant meets the particularity requirement.

The particularity requirement mandates that search warrants be "sufficiently definite to enable the searching officers to identify the property authorized" to be searched. *United States v. Summage*, 481 F.3d 1075, 1079 (8th Cir. 2007) (quoting *United States v. Horn*, 187 F.3d 781, 788 (8th Cir. 1999)). In determining whether a warrant meets the particularity requirement, courts "consider 'the purpose for which the warrant was issued, the nature of the items to which it is directed, and the total circumstances surrounding the case.'" *United States v. Schave*, 55 F.4th 671, 675 (8th Cir. 2022) (quoting *Fiorito*, 640 F.3d at 346). The particularity requirement is met in search warrants where "the street addresses were correct, and there was little risk that another address would be searched erroneously." *United States v. Pitts*, 173 F.3d 677, 680 (8th Cir. 1999).

The property at 716 West State Street in Springfield, Missouri, is a single-family residence that has been divided into two separate dwellings. Mr. Platek occupies only the upper level, identified as 716 ½ West State Street. Each dwelling has its own entrance, with Mr. Platek's residence accessible via a wooden staircase on the east side of the building. The search warrant described the premises to be searched as "[t]he entire property located at 716 ½ West State Street, Springfield, Greene County, Missouri 65806." (Doc. 63-2 at 2; Doc. 74-1 at 2). The search warrant further described the single-family home that contains Mr. Platek's apartment as "a two-story family home with a brown roof." (*Id.*). It also noted multiple times that officers had observed Mr. Platek using the exterior staircase to access the second story. (Doc. 74-1 at 14). Special Agent

Heath testified that he personally observed Mr. Platek entering and exiting his residence through the second-story door by way of the side staircase. (Tr. 36:14-20, 37:9-15).

The search warrant meets the particularity requirement. First, it accurately identifies the location to be searched as 716 ½ West State Street in Springfield, Missouri. (Doc. 74-1 at 1-2). Second, it includes a photograph of the property showing the side staircase leading to Mr. Platek's front entrance. (*Id.* at 2). Third, the incorporated affidavit details law enforcement's observations of Mr. Platek using that same staircase to access the second floor. (Doc. 74-1 at 14); *see Groh v. Ramirez*, 540 U.S. 551, 557-58 (2004) (incorporating affidavit into warrant when the search warrant references the affidavit and the supporting document accompanies the warrant); *Nieman*, 520 F.3d at 839 (holding that an affidavit may provide the necessary particularity if it is attached to the warrant). Finally, Special Agent Heath, who participated in executing the warrant, possessed firsthand knowledge of the door Mr. Platek used to enter and exit his residence. (Tr. 36:14-20, 37:9-15); *Clement*, 747 F.2d at 461. The warrant clearly identifies the specific building and directs officers to a defined entry point. It neither authorizes a search of the broader property nor does it direct officers to search the residence located at 716 West State Street. Because at least one participating agent had personal knowledge of the premises, the warrant properly distinguishes 716 ½ West State Street from the rest of the property.

Mr. Platek asserts that because the search warrant authorized a search of "the entirety of 716 ½ West State Street . . . including the residential building, any associated outbuildings, and any appurtenances thereto," there existed a reasonable likelihood that law enforcement might mistakenly search both units within the single-family home instead of limiting the search to his dwelling. (Doc. 63 at 8-9). He further contends that this language renders the warrant "so facially deficient" that officers could not have presumed its validity. (Doc. 63 at 9). The Court disagrees.

A warrant is considered facially deficient, and therefore not entitled to a presumption of validity, when it fails to adequately describe the location to be searched or the items to be seized. *Groh*, 540 U.S. at 565; *United States v. Hamilton*, 591 F.3d 1017, 1028 (8th Cir. 2010). That is not the case here. As discussed above, the warrant was sufficiently specific in identifying the property to be searched. Moreover, Special Agent Heath, one of the officers executing the warrant, had personally observed Mr. Platek entering and exiting his residence and knew which floor he occupied. (Tr. 36:14-20, 37:9-15). There was minimal risk that officers would search the wrong premises, and indeed, law enforcement did not attempt to search any portion of 716 West State Street outside of Mr. Platek's residence at 716 ½. The fact that no officers searched 716 West State Street pursuant to this warrant demonstrates the absence of confusion. The warrant "described the place to be searched 'with sufficient particularity as to enable the executing officer[s] to locate and identify the premises with reasonable effort.'" *Johnson*, 75 F.4th at 844. Given the circumstances of the investigation, the warrant met the particularity requirement and effectively distinguished between areas properly subject to search and those beyond its scope.

Mr. Platek urges the Court to invalidate the warrant on a hyper-technical ground, rather than applying the practical standard established by the Eighth Circuit. *See Shrum*, 59 F.4th at 973. The warrant identified both the specific street address of Mr. Platek's residence and the particular portion of the building to be searched. Officers did not attempt to search any other location. Accordingly, the Court recommends that the District Judge conclude the warrant described the place to be searched with sufficient particularity.

**C. The search warrant is not unconstitutionally overbroad.**

Mr. Platek next contends that the property identified for seizure was facially overbroad. (Doc. 63 at 10-16). The Government maintains that the search warrant was not. (Doc. 74 at 16-

23). The Court recommends that the District Judge conclude the warrant was sufficiently limited in scope and not overbroad.

The Eighth Circuit has held that a warrant's reference to a specific statute adequately confines the officers' search and satisfies the Fourth Amendment's particularity requirement. *United States v. Gleich*, 397 F.3d 608, 612 (8th Cir. 2005) (finding that warrants authorizing searches for child pornography as defined by a specific state statute satisfied the particularity requirement); *Nieman*, 520 F.3d at 839 (holding that a description of property that tracks a state statute meets the particularity requirement).

Attachment B to the search warrant for Mr. Platek's residence authorized law enforcement to seize "[r]ecords, documents, writings, and correspondence with others pertaining to the communication of any threat to kidnap any person or any threat to injure the person of a [sic] another" and "[a]ny and all records showing or bearing indicia of the use, ownership, possession, or control of the residential/business premises described in Attachment A and items contained therein." (Doc. 63-7 at 2-3; Doc. 74-1 at 3-4). The warrant also authorized the seizure of "keys, storage combinations, passwords, and paperwork which indicate any other storage containers or facilities that could contain evidence of threats to kidnap any person or any threat to injure the person of another." (Doc. 63-7 at 3; Doc. 74-1 at 4). The property identified for seizure was limited to materials relevant to the charges against Mr. Platek, specifically threats communicated via interstate channels. (Doc. 74-1 at 6).

Mr. Platek contends that the phrase "pertaining to the communication of any threat to kidnap any person or any threat to injure the person of a [sic] another" is overly broad. He likens it to the search warrant deemed overbroad by the Eighth Circuit in *United States v. LeBron*. 729 F.2d 533 (8th Cir. 1984). In *LeBron*, the court invalidated a warrant authorizing the seizure of "any

records which would document illegal transactions involving stolen property," concluding that the description lacked any meaningful limiting factor to guide officers in determining what property or records could be seized. *Id.* at 539. The Eighth Circuit explained that labeling property as "stolen" fails to differentiate between what is stolen and what is not, a distinction not readily apparent to executing officers. *Id.* at 537. Consequently, the warrant's reference to "property believed to be stolen" was too general to reasonably constrain law enforcement discretion during execution. *Id.*

The search warrant authorizing the search of Mr. Platek's apartment is distinguishable. Unlike stolen property, the difference between a threatening communication and a non-threatening one is readily identifiable to an executing officer. The warrant's reference to the specific illegal activity under investigation ("communication of any threat to kidnap any person or any threat to injure the person of another"), provides a substantive limitation on the officer's discretion. *See LeBron*, 729 F.2d at 538. The records and documents described in the warrant were reasonably connected to the alleged unlawful conduct and were likely to contain evidence pertinent to that offense. *See Sherman*, 372 F. App'x at 676 ("The first paragraph of the search warrant was tied to the specific [offense] suspected, and the computer records identified in the second paragraph were likely to contain evidence relevant to [that offense]. The search warrant necessarily needed to include all computer equipment and systems to effectively allow law enforcement to 'recognize and seize the materials described.'").

Mr. Platek contends that 18 U.S.C. § 875(c) is too broad to meaningfully limit the scope of the search or to guide officers in determining what evidence may be seized. The Eighth Circuit has not yet addressed this specific issue. However, both the Seventh and Ninth Circuits have upheld search warrants that define the scope of a search by reference to an alleged violation of 18 U.S.C.

§ 875(c). *See United States v. Khan*, No. 15-CR-00286, 2017 WL 2362572, at *15 (N.D. Ill. May 31, 2017), *aff'd*, 937 F.3d 1042 (7th Cir. 2019) ("Far from sanctioning the wholesale seizure of any article found in Defendant's home, the warrant is limited to items related to Defendant's on-line violation of 18 U.S.C. § 875(c)."); *United States v. Kinney*, No. 23-1051, 2024 WL 3450988, at *1 (9th Cir. July 18, 2024) ("The warrant did not, as alleged by Kinney, allow for search and seizure of any content of the cell phone; rather, it limited the search to content connected to 'evidence of the violations of 18 U.S.C. § 875(c).'").

Accordingly, this Court recommends that the District Judge conclude the search warrant was not unconstitutionally overbroad.

### D. The photographs of the firearm and ammunition taken during the search of Mr. Platek's apartment should not be suppressed.

Mr. Platek contends that the firearm discovered in his residence fell outside the scope of the search warrant and, therefore, all related evidence should be suppressed. (Doc. 63 at 16-17). The Government argues that suppression is unwarranted because the firearm and supporting evidence fall within the plain-view exception. (Doc. 74 at 23-26). The Court recommends that the District Judge find the firearm was lawfully observed under the plain-view doctrine and should not be suppressed.

Under the plain-view exception to the Fourth Amendment, law enforcement officers may seize an object without a warrant if "(1) the officer lawfully arrived at the location from which he or she views the object, (2) the object's incriminating character is immediately apparent, and (3) the officer has a lawful right of access to the object itself." *United States v. Saddler*, 19 F.4th 1035, 1041-42 (8th Cir. 2021); *United States v. Juneau*, 73 F.4th 607, 616-17 (8th Cir. 2023). The doctrine also applies to incriminating items discovered "in any closet, container, or other closed compartment . . . large enough to contain" an object authorized to be searched or seized by the

warrant. *United States v. McManaman*, 673 F.3d 841, 848 (8th Cir. 2012). "An item's incriminatory nature is immediately apparent if the officer at that moment had probable cause to associate the property with criminal activity." *United States v. Figueroa-Serrano*, 971 F.3d 806, 811 (8th Cir. 2020) (quoting *United States v. Lewis*, 864 F.3d 937, 941 (8th Cir. 2017)). Probable cause exists when "the facts available to a reasonably cautious man would warrant a belief that certain items may be contraband or stolen property or useful as evidence of a crime." *United States v. Clay*, 579 F.3d 919, 932 (8th Cir. 2009).

There is little doubt that the first and third prongs of the plain-view test are satisfied. The firearm was discovered in Mr. Platek's apartment, a location lawfully searched pursuant to a valid warrant that authorized examination of small containers in the room. The firearm was found in the course of executing the warrant's authorized search, and the omission of firearms or ammunition from the list of items to be seized is not determinative. The remaining question is whether the firearm's "incriminating nature [was] immediately apparent." *Figueroa-Serrano*, 971 F.3d at 811.

Mr. Platek is charged with making threats to injure through interstate communications. Some of the alleged threats reference firearms and ammunition ("I've got the ammo, I just need to rent a uhaul [sic] and drive to CA") and shooting children ("Bullets are cheap and children are plentiful"). (Doc. 74-1 at 8, 13). Under these circumstances, a reasonably cautious person aware of the threats attributed to Mr. Platek would conclude that his possession of a firearm constitutes evidence relevant to the charged offense. *Clay*, 579 F.3d at 932 (holding that probable cause exists when "the facts available to a reasonably cautious man would warrant a belief that certain items may be contraband or stolen property or useful as evidence of a crime"); *see United States v. Crawford*, 220 F. Supp. 3d 931, 939-41 (W.D. Ark. 2016) (upholding a search that incidentally uncovered a firearm even though the warrant did not specifically authorize it). The special agents

had lawful accessed the firearm, including removing it from the container in which it was found, as part of their ongoing search for electronic devices authorized under the warrant. *See Saddler*, 19 F.4th at 1042-43 (holding the plain-view exception applicable where officers incidentally discovered a firearm and its incriminating character became evident only after removing it from the closet where it was found). Because the firearm's incriminating nature was immediately apparent, the agents were justified in handling and photographing it. *See Crawford*, 220 F. Supp. at 940-41; *Saddler*, 19 F.4th at 1042-43.

Accordingly, this Court recommends that the District Judge find that evidence of the firearm should not be suppressed.

### E. Even if the warrant were constitutionally deficient, the *Leon* good-faith exception would nevertheless apply.

The Government contends that, even if the search warrant was deficient in any respect, the good-faith exception should apply to the special agents' actions. (Doc. 74 at 27-30). Mr. Platek argues that the exception is inapplicable because the warrant was so facially deficient that the agents could not have reasonably relied on it. (Doc. 77 at 16-18). The Court recommends that the District Judge find that, even if the warrant were deficient, the *Leon* good-faith exception applies.

The exclusionary rule does not apply "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *Leon*, 468 U.S. 897, 920 (1984). However, *Leon* identifies four circumstances in which an officer's reliance on a warrant is not objectively reasonable: "[1] when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; [2] when the issuing judge wholly abandoned his [or her] judicial role in issuing the warrant; [3] when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and [4]

when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid." *Fiorito*, 640 F.3d at 345 (citing *Leon*, 468 U.S. at 923). In evaluating the objective reasonableness of an officer's belief in the warrant's validity, the Eighth Circuit instructs courts to consider "the totality of the circumstances, 'including any information known to the officer but not presented to the issuing judge.'" *Saddler*, 19 F.4th at 1040 (quoting *United States v. Jackson*, 784 F.3d 1227, 1231 (8th Cir. 2015)).

Mr. Platek contends that the warrant was so facially deficient as to make reliance on its validity unreasonable, arguing that it was impermissibly broad in authorizing what could be searched and seized. (Doc. 77 at 17). The Court has already recommended that the District Judge find the warrant was not unconstitutionally overbroad and will not revisit that analysis here.

Nevertheless, even if the search warrant were deemed unconstitutionally overbroad, the good-faith exception would still apply to the officers' conduct. In *Saddler*, the Eighth Circuit determined that the search warrant in question was unconstitutionally overbroad and therefore invalid. 19 F.4th at 1041. However, the court held that the warrant was not so "facially deficient" that officers could not reasonably presume its validity. *Id.* There, the warrant authorized a search for "any other item related to aggravated assault," a description the court pronounced as "carelessly overbroad." *Id.* Even so, the Eighth Circuit concluded that a reasonable officer could assume such authorization to search for items within that general category was facially valid. *Id.*

In this case, even if the authorization to search for records "pertaining to the communication of any threat to kidnap any person or any threat to injure the person of a [sic] another," were overbroad, similar to *Saddler*, it is not "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." *Id.* (quoting *Leon*, 468 U.S. at 923). A reasonable agent executing the warrant could have concluded that language was facially valid as

to the scope of the search it authorized. *See id.* Furthermore, the record contains no evidence that Special Agent Harris, Special Agent Heath, or any other agent involved in obtaining or executing the warrant acted deliberately, recklessly, or with gross negligence. *See Herring*, 555 U.S. at 144 (holding that the exclusionary rule applies only where police conduct is "deliberate, reckless, or grossly negligent"). The Special Agents' reliance on the warrant was objectively reasonable.

Accordingly, the Court recommends that, even if the warrant is found to be deficient, the District Judge find that the good-faith exception applies.

### III. <u>Conclusion</u>

For the foregoing reasons, IT IS RECOMMENDED that the District Judge, after making an independent review of the record and applicable law, enter an order DENYING Defendant David William Platek's Motion to Suppress. (Doc. 63).

Counsel are reminded that each party has fourteen (14) days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation that are accepted or adopted by the District Judge, except on the grounds of plain error or manifest injustice.

Dated this 28th day of January, 2026, at Jefferson City, Missouri.

*Willie J. Epps, Jr.*

Willie J. Epps, Jr.
Chief United States Magistrate Judge