# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,      )
                               )

              Plaintiff,      )

                               )

vs.                           )    No. 6:25-CR-3076-MBB

                               )

DAVID WILLIAM PLATEK,      )

                               )

             Defendant.      )

## DEFENDANT'S OBJECTIONS TO REPORT AND RECOMMENDATION CONCERNING MOTION TO DISMISS

Defendant David William Platek, through counsel, submits the following objections under Fed. R. Crim. P. 59(b) and Local Rule 74.1(b)(1) to the Magistrate's Report and Recommendation (ECF Dkt. 119), regarding Defendant's Motion to Dismiss the Indictment.   (Mot., ECF Dkt. 65; Reply, ECF Dkt. 113.)

This Court "must consider de novo any objection" to the Magistrate's recommendation and "may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter" to the Magistrate "with instructions."   Fed. R. Crim. P. 59(b); *see also* Local Rule 74.1(b)(3).   Mr. Platek respectfully objects to the Report and Recommendation to deny his motion to dismiss and asks this Court to grant the motion.

## A. Objections to the Factual Statements

Mr. Platek objects to several factual conclusions made in the "Background" section of the Report.   First, on page one, the Report falsely states that the California complaint included "one count."   (Report at 1.)   The California compliant, just like the complaint in this district, did not specify a number of counts, but rather included the substantive offense charged, which is the same as that in the Missouri compliant: 18 U.S.C. § 875(c). (ECF Dkts. 65-1 at 2, 65-8 at 2.)   Likewise, the California Indictment was not limited to "one count" concerning the December 11, 2024 repost (Report at 2, 4), but rather included as distinct allegations all of the threats allegedly communicated by Mr. Platek between December 9 and December 17, 2024, describing them by date and by direct quotation. (ECF Dkt. 65-2.)   The Report's discussion of the alleged repost is also incorrect.   The Report claims that the December 11 repost was written by Mr. Platek while he was present in the Central District of California.   (Report at 2.)   That is false.   The government

1

acknowledges the falsity of this statement in its opposition to the Motion and in the Missouri complaint. (ECF Dkt. 80 at 3.) Mr. Platek was in the Western District of Missouri at the time he allegedly sent the communications. (*Id.* at 1-4.)

Separately, the factual summary of the conversations between counsel concerning venue is incorrect. (Report at 3.) First, to the extent the defense intended to oppose a never-filed government motion seeking to admit messages that were not in the California Indictment, it would in no way exclude the messages charges in the Missouri Indictment, because, as discussed above, all of those messages are included by both date and direct quotation in the California Indictment. (ECF Dkt. 65-2.) Nonetheless, the defense never intended to or did oppose filing of all charges in California. As summarized by counsel in a sworn declaration filed with the Court, "our intent was, and always has been, to . . . waive venue as to any new charges the government wished to add so that the case could proceed to trial on the shortest possible timeline given that Mr. Platek is detained." (2:25-cr-00061-HDV (C.D. Cal.), Dkt. No. 43-1.)

These incorrect facts lead to incorrect conclusions of law as discussed below.

### B. Objections to Conclusions of Law

The defense objects to the Report's overall conclusion that, "the proceedings in the two districts are distinct and do not constitute a single, continuous prosecution." (Report at 7.) To support this conclusion, the Report cites *United States v. Holder*, 399 F. Supp. 220 (D.S.D. 1975) and *United States v. Crow Dog*, 532 F.2d 1182 (8th Cir. 1976), which both arise out of the Wounded Knee prosecutions. There are factual and legal errors in relying on these cases. As a factual matter, the cases have no bearing on this case because

2

the original indictment discussed by those courts was dismissed *without prejudice*, at the government's request without any opposition by the defense. *Holder*, 399 F. Supp. at 224. Of course, a dismissal "without prejudice" would not prevent the government from initiating new charges, as that's precisely what such a dismissal is intended to do. Here, the original indictment was dismissed *with prejudice*—over the government's objection—because the government's "decision to bring new charges in Missouri constitutes prosecutorial harassment." (ECF Dkt. 65-4 at 1.) A dismissal with prejudice is fundamentally different and is designed to "bar reprosecution." *United States v. Taylor*, 487 U.S. 326, 343 (1988); *see United States v. Barraza-Lopez*, 659 F.3d 1216, 1222 (9th Cir. 2011) ("dismissal with prejudice allows a district court to prevent reindictment" to "curb abusive behavior"); *United States v. Brown*, 183 F.3d 1306, 1310 (11th Cir. 1999) (describing "[t]he general rule that a defendant may be reprosecuted on charges dismissed without prejudice," and "the rule that a defendant may not be reindicted and tried on charges dismissed with prejudice").

That brings us to the legal distinction. The only question in those cases was whether a venue decision was binding on the court overseeing the second indictment. *Holder*, 399 F. Supp. at 224-25; *Crow Dog*, 532 F.2d at 1187. That is not a question presented here. The question here is whether the government is permitted to refile and maintain the same charges after a complaint and indictment containing those charges was dismissed with prejudice in another district court. Particularly where, the dismissal with prejudice was caused by the government's misconduct in refiling the charges in this

3

district. The *Crow Dog* Court's finding that a venue decision—which held only "that a fair trial could not be held in the District of South Dakota at that point in time with regard to that particular indictment"—is not binding on a later prosecution has no bearing on the applicability of the California court's finding that the government engaged in prosecutorial harassment by bringing this case while the California case was pending. *Crow Dog*, 532 F.2d at 1188.

Taking a step back, the Report's ultimate conclusion is that a "with prejudice" dismissal is meaningless. The Report admits that at the very least one of the charges in the Missouri Indictment is identical to a charge dismissed with prejudice in the California Indictment. (Report at 4.) Yet, the Report concludes that even though the charge was dismissed with prejudice, it in no way prevents the government from refiling and maintaining that charge in another district court. (*Id.* at 9.) What then is the purpose of a dismissal with prejudice? The Report never grapples with this important question, nor with the dozens of courts that have held that a dismissal with prejudice has legal import. *See Woodring v. United States*, 311 F.2d 417, 424 (8th Cir. 1963) (holding that the defendant is prejudiced if after a dismissal with prejudice under Rule 48(a), the defendant "was subsequently reindicted for the same charge"); *Taylor*, 487 U.S. at 343 (holding "dismiss[al] with prejudice" "bar[s] reprosecution"); *United States v. Chases*, 558 F.2d 912, 914 (9th Cir. 1977) ("[T]he dismissal with prejudice of all other conspiracy charges leveled against Chases effectively eliminated any danger or risk of successive prosecutions for the same crime.").

### C. Objections to Discussion of Rule 48(a)

The Report misreads the procedural history of this case. It claims that the Missouri case is not a "refiling" because at the time the Missouri Indictment was filed, the California case was not yet dismissed. That is too cute by half. At the time the Missouri Indictment was filed, the government had already moved to dismiss the California case (ECF Dkt. 65-11) and the California court had already held that "the decision to bring new charges in Missouri constitutes prosecutorial harassment." (ECF Dkt. 65-4.) The only reason the case was not yet dismissed was because the defense opposed dismissal without prejudice. The government sought dismissal of the California case precisely to refile the case in Missouri. It said so itself: "On May 1, 2025, a criminal complaint, along with an arrest warrant, were issued in the Western District of Missouri charging defendant with a violation of 18 U.S.C. 875(c) (Threats by Interstate Communication) -- the same offense for which defendant has been indicted in this matter. [] Accordingly, to avoid parallel criminal proceedings, the government moves to dismiss the Indictment and Complaint . . . ." (ECF Dkt. 65-11.)

The Report also claims that the Missouri Indictment includes additional charges that were not in the California Indictment. (Report at 11-13.) It states that the Missouri indictment alleges "distinct threats made on different dates from the California Indictment." (*Id.* at 13.) But, the Report ignores that all of the threats on all of the dates were included in the California Indictment. (ECF Dkt. 65-2.) The Report seems to focus on the number of counts charged in the Missouri Indictment. "The Court has long recognized that an indictment may charge numerous offenses or the commission of any

5

one offense in several ways." *United States v. Miller*, 471 U.S. 130, 136 (1985). A defendant's protection against reprosecution is "not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units." *Brown v. Ohio*, 432 U.S. 161, 169 (1977). Whether styled as one count or four, "indictments generally must be viewed in their totality," and the California indictment included all the offenses in the Missouri indictment. *United States v. Hansmeier*, No. 016CR00334JNEKMM, 2017 WL 8947193, at *3 (D. Minn. July 24, 2017), *aff'd*, 988 F.3d 428 (8th Cir. 2021).

The Report also overlooks the fact that in addition to the Indictment, the California Complaint was also dismissed with prejudice. (ECF Dkt. 65-7.) There is no dispute that the California Complaint and Missouri Complaint are identical and that the California Complaint includes all of the offenses charged in the Missouri Indictment. (ECF Dkt. 113 at 7.) The Report claims it need not address this question because the cases cited by the defendant concern Speedy Trial Act violations. (Report at 13-14.) But, the portions of the cases cited by the defense do not concern an interpretation of the Speedy Trial Act. In fact, several of the cases expressly acknowledge that the Speedy Trial Act violation has no import on the outcome. For example, in *United States v. Melendez*, No. 1:05CR23 (NAM), 2005 WL 1388911, at *2 (N.D.N.Y. June 10, 2005), "[t]he government expressly sought, and Magistrate Judge Treece ordered, that the criminal complaint, which charged defendant with violating 18 U.S.C. § 1001(a)(3), be dismissed with prejudice pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure. Thus, *regardless of whether the*

*Speedy Trial Act was violated*, the government has no right to reindict defendant for the same offense." (emphasis added and citations omitted). The defense cites cases arising in the Speedy Trial Act posture because that is the primary basis for dismissal of a complaint with prejudice. But the reason for dismissal is irrelevant, the question, once again, is what import does the dismissal with prejudice have. Those cases present the answer: it prevents reprosecution of the offense charged based on the allegations in the complaint.

Based on the Report's concern, the defense points to cases arising outside of the Speedy Trial Act, which stand for the same proposition. In *United States v. Nguyen*, No. MAG 25-148, 2025 WL 3073702 (D.D.C. Nov. 4, 2025, the court dismissed—over the government's objection—a complaint with prejudice that charged threats from August 2 to 16, where the government had filed a similar complaint in D.C. Superior court based on the threats on August 6. *Id.* at *4-5. The court was expressly concerned with charging, dismissing before jeopardy attached, and commencing another prosecution, which is expressly forbidden by Rule 48(a). Further, the court was concerned that the government had engaged in "strategic splitting of different counts" by choosing only certain dates to charge, as such conduct "must be viewed with suspicion and disfavor, for it clearly lends itself to abuse and is particularly invasive of a defendant's legitimate expectations." *Id.* at *5 (internal quotation omitted). The court dismissed with prejudice in order to "bar federal prosecution" of any of the threats on any of the dates charged in the complaint. *Id.*; *see United States v. Cabral-Gonzalez*, No. CR 1:25-MJ-00139-CYC, 2025 WL

7

3166800, at *1 (D. Colo. Nov. 13, 2025) (dismissing complaint with prejudice to "ensur[e] that the charges, once dropped, cannot be resurrected" (internal quotation omitted)). Likewise, dismissal of the California complaint with prejudice bars federal prosecution of any of the threats on any of the dates charged in the complaint.

### D. Objections to Discussion of Law of the Case, Res Judicata, and Collateral Estoppel

Contrary to the Report, application of res judicata or collateral estoppel do not require a jury verdict. (Report at 17-19.) In *United States v. Oppenheimer*, 242 U.S. 85, 87-88 (1916), the Supreme Court applied res judicata to bar a second prosecution after the first had been dismissed on defendant's motion that the case was barred by the statute of limitation. The Court said:

> It cannot be that a judgment of acquittal on the ground of the statute of limitations is less a protection against a second trial than a judgment upon the ground of innocence, or that such a judgment is any more effective when entered after a verdict than if entered by the government's consent before a jury is empaneled. . . . Where a criminal charge has been adjudicated upon by a court having jurisdiction to hear and determine it, the adjudication . . . is final as to the matter so adjudicated upon, and may be pleaded in bar to any subsequent prosecution for the same offense.

*Id.*

Numerous courts are in accord. In *Loera v. United States*, 714 F.3d 1025, 1029 (7th Cir. 2013), Judge Posner considered whether to apply collateral estoppel to a pretrial decision, stating "[t]he difference in the stage of the proceeding at which the judge ruled shouldn't affect whether the issue can be revisited in the second proceeding." *Id.* at 1030. He concluded by noting that no verdict or jury determination was necessary; the court's "dismissal of the first indictment should be treated as if it were a final judgment and the

8

evidentiary ruling that the judge made in that first proceeding should be given collateral estoppel effect." *Id.; see United States v. Arterbury*, 961 F.3d 1095, 1103 (10th Cir. 2020) (agreeing with *Loera* and concluding that where the government did not appeal the "unfavorable suppression ruling," the order was "binding even in the event of a dismissal and reinstitution of the charges" based on "collateral estoppel under the federal common law").

Therefore, the Report's conclusion that the defense could not apply res judicata to the California court's order "without a verdict" is error. (Report at 17.) Likewise, it is error not to apply collateral estoppel because the California court's order finding that the government engaged in misconduct in filing and maintaining this case was not "proved beyond a reasonable doubt." (Report at 18.) No such requirements exist for either doctrine. Like the dismissal, suppression, and evidentiary rulings made in *Oppenheimer*, *Loera* and *Arterbury*, the California Court's dismissal of the case with prejudice based on the government's harassment, forum shopping, and gamesmanship has preclusive effect in this action and warrants dismissal for the same reasons.

### E. Objections to Sixth Amendment and Speedy Trial Act Conclusions

Notably, the Report found in Mr. Platek's favor on two of the four factors the Court must consider in determining whether Mr. Platek's speedy trial right under the Sixth Amendment has been violated. (Report at 23-27.) The Report found the length of the delay—which at that point was 13 months, and is now 14 months—was presumptively prejudicial, and that Mr. Platek had repeatedly asserted his speedy trial right. (*Id.* at 23-25.) However, the Report found that Mr. Platek was responsible for most of the delay

9

from October 20, 2025 through February 9, 2026, although one of those continuances was requested by the Court. (*Id.*; ECF Dkt. 55.) Nonetheless, the circumstances have changed. At the time of the Report, the government had requested one continuance from February 9, 2026 to March 16, 2026, which the defense opposed. (ECF Dkts. 94, 101.) The government has now requested and received a second continuance from March 16, 2026 to July 6, 2026, over the defense's objection. (ECF Dkts. 111, 116, 123, 127.) The government is now responsible for at a minimum six months of the delay in Mr. Platek's trial, which is more than the delay the Report attributed to the defense. (Report at 24.) The reason for the delay now weighs in the defense's favor. Given the continuances, by the time of trial, Mr. Platek—who has no criminal history and no prior arrests of any kind— will have been detained for *18 months* for alleged threatening text messages he made to his friend, Daniel Serber—not the alleged victim—over a nine-day period in December 2024. This is undeniably prejudicial to Mr. Platek, who has been dragged from Missouri, to California, and back to Missouri on the same offense, which amounts to greater prejudice than an average person accused of a crime. These facts demonstrate that the delay has been "unusually burdensome or oppressive," warranting dismissal. (Report at 26.)

### F. Conclusion

The defense maintains and reraises all of the arguments raised in the Motion and Reply in support of the motion to dismiss. The arguments presented therein in conjunction with those here warrant dismissal with prejudice.

Respectfully submitted,

/s/ Rebecca M. Abel

**JAMES S. THREATT**
**(CA No. 325317/ MO NO. V2332)**
**REBECCA M ABEL**
**(CA No. 298604/MO No. V2333)**
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, CA 90012
(213) 894-2235
Attorney for Defendant

11

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of March, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which sent e-mail notification of such filing to all CM/ECF participants in this case.

*/s/ Rebecca M. Abel*
**REBECCA M. ABEL**

12